**UNITED STATES DISTRICT COURT**
**DISTRICT OF NEW JERSEY**

| | |
|---|---|
| COREY MOORE, | 1:19-cv-19107 |
| Petitioner, | **OPINION** |
| v. | |
| UNITED STATES OF AMERICA, | |
| Respondent. | |

**APPEAERANCES**:

EDWARD F. BORDEN, JR.
EARP COHN, PC
20 BRACE ROAD
4TH FLOOR
CHERRY HILL, NJ 08034

   *Counsel on behalf of Petitioner*

DIANA V. CARRIG
OFFICE OF THE US ATTORNEY
US POST OFFICE BUILDING
401 MARKET STREET
4TH FLOOR
CAMDEN, NJ 08101

   *Counsel on behalf of Respondent*

**HILLMAN**, **District Judge**

Pending before the Court is Petitioner Corey Moore's ("Petitioner") counseled Motion to Vacate, Set Aside, or Correct his judgment of conviction imposed on March 11, 2019. (ECF No. 18.) For the reasons stated below, Petitioner's Motion will be denied.

1

## BACKGROUND

The factual and procedural history of this matter is set forth in the Court's previous Opinion, Moore v. United States, No. 19-19107, 2020 U.S. Dist. LEXIS 189165 (D.N.J. Oct. 9, 2020), and need not be fully repeated here. Petitioner raises two ineffective assistance of counsel arguments based on alleged inactions by his counsel, Anne Singer. First, Petitioner alleges Singer failed to advise him about "the advantages and disadvantages of filing an appeal." (ECF No. 4 at 4.) Second, Petitioner alleges Singer failed to file an appeal after Petitioner instructed her to do so. (Id. at 5.)

The Government disputes the alleged errors of Singer and asserts she met with Petitioner on March 19, 2019 to discuss his right to an appeal, and at that time, Petitioner told Singer to not file an appeal. Ms. Singer submitted a declaration, supported by the attachments thereto, in support of the Government's opposition. (ECF No. 13-15). Because of this material factual dispute, the Court determined that an evidentiary hearing was necessary. After appointing counsel to represent Petitioner, this Court conducted an evidentiary hearing to resolve the factual dispute on June 16, 2021. In addition to other evidence, the following relevant testimony was elicited during the evidentiary hearing:

### a. Petitioner's Testimony

Petitioner testified that Singer did nothing for him during her representation of him and she simply wanted to finish his case.  He testified that he previously provided Singer with caselaw and support for legal arguments, which she failed to use to support Petitioner in his criminal matter.  He further testified that even when the Court asked him at his plea hearing whether he was satisfied with Singer's representation he did not answer the question.

Regarding Petitioner's appeal, Petitioner testified that he first told Singer in the courtroom he wanted to file an appeal immediately after he was sentenced.  In the courtroom, Petitioner testified he complained to her that he was sentenced to too much time, to which she agreed and explained she did not know that the prosecutor "had it out for him like that" or words to that effect.  He further testified that Singer visited him at the Federal Detention Center-Philadelphia (FDC-Philadelphia) following his sentencing because he wanted to file an appeal and wanted his phones back that were seized during the government's investigation.  Petitioner confirmed Singer was able to retrieve Petitioner's phones and place them with Petitioner's brother following their meeting at FDC—Philadelphia.

During the conversation at FDC-Philadelphia, Petitioner testified that he was very upset and cussing and repeatedly

3

notified Singer he wanted to file an appeal. On cross-examination, Petitioner explained Singer confirmed she would file an appeal for him after the first time she was asked to do so. Petitioner further admitted that during the meeting, Singer did mention good time credit. Petitioner testified that following the meeting at FDC-Philadelphia, he received a letter from Singer dated March 14, 2019, and he never spoke to her again.

Petitioner then testified that in September 2019, six months after his sentencing in this Court, he spoke to his brother, who informed him that no notice of appeal was ever filed. During this phone call, Petitioner testified that his brother thought it was crazy there was no appeal filed because Singer did not follow Petitioner's instructions. Petitioner explained to his brother that he was finalizing an appeal, which he was informed had a 50-50 chance of success. In response to a question inquiring how soon after the conversation with his brother did Petitioner file his appeal, Petitioner testified that he already had a paralegal working on the appeal because he never heard anything about the original appeal. He further testified that he was trying to first verify if he had one because if he had an appeal filed already, then he was not going to file the appeal the paralegal at the prison was helping him finalize.

4

On cross-examination, Petitioner admitted he had access to a phone on the unit and was able to use that phone when needed. However, Petitioner testified he never called Singer asking her about the status of the appeal from March to September 2019. Petitioner testified he never called Singer because he could no longer trust her because in his view she had lied to him about an appeal and he was hurt when he found out that his appeal was not on the docket.

### b. Ms. Singer's Testimony

Singer testified that when she took over the representation of Petitioner's criminal matter, she received a report from a psychologist that had been obtained by prior counsel, which detailed Petitioner's mental deficits. Singer testified that she was very conscious of his mental deficits during her entire representation of Petitioner and for this reason, bent over backwards for Petitioner to be sure he understood everything that was going on. By way of example, Singer testified she reviewed the plea agreement carefully with Petitioner by reading the entire plea agreement to Petitioner.

Singer testified that during her time representing Petitioner, he never once provided her with caselaw or legal arguments that she should use in support of his case. Moreover, she testified that because of her legal advocacy she successfully challenged the draft Pre-sentence Report, which

5

resulted in a lower advisory guideline range. Singer further helped Petitioner by drafting a detailed sentencing memorandum, which resulted in the Court granting a downward variance.

Singer further denied that during Petitioner's sentencing he informed her that he believed he received too much time, or that he wanted to appeal. She explained that if he had done so, she probably would not have found it necessary to go visit him at FDC-Philadelphia following sentencing. She also denied Petitioner's accusation that, at the sentencing, she agreed with Petitioner that he received too much time, and that she told him the prosecutor had been vindictive.

Singer testified she made a trip to the FDC-Philadelphia on March 13, 2019 because she felt it was important to spend extra time with Petitioner, specifically for the purposes of seeing whether he wanted to appeal. She testified that she was aware Garza v. Idaho, 139 S. Ct. 738 (2019), which came out eight days before Petitioner was sentenced, held that she had an obligation to file a notice of appeal if a client asked her to do so. Singer testified the visit with Petitioner at FDC—Philadelphia was to insure she understood what Petitioner wanted. She testified that her meeting with Petitioner lasted approximately 45 to 50 minutes, and they spent a lot of time discussing an

6

appeal and whether he wanted to file one.[1]

More specifically, Singer testified she discussed how much of Petitioner's eight-year sentence he was likely to serve based on pre-sentencing detention and allotting for good time credit. She explained that these deductions left him with approximately a little more than five years, to which Petitioner responded that he was okay with that and notified her he would not like to file an appeal. Singer testified that if he wished to file an appeal, then she knew she had a duty to do exactly that, and she would have filed an appeal on behalf of Petitioner.

When questioned about Petitioner's demeanor during the meeting at FDC-Philadelphia, Singer explained that he was surprisingly in a very good mood and was very warm to her. Petitioner explained to her that he was "fine" with the sentence he received and at the conclusion of the meeting thanked her for representation. Singer further testified that during the meeting Petitioner asked her to do two things: (1) send him a copy of his judgment; and (2) get his cellphones back from the government and return them to his brother Rodger.

---

[1] Singer provided the Court with her billing records, which show she billed 1.2 hours on March 13, 2019 for a "[c]onference with client at FDC Philadelphia regarding his questions about Judgment, sentencing and appeal, etc." (ECF No. 13-15 at 7-8.) In her sworn declaration, Singer explained she met with Petitioner for approximately 45-50 minutes after some additional time waiting and clearing security at FDC—Philadelphia. (Id.)

7

Following Singer's meeting with Petitioner on March 13, 2019, she testified she went back to her office and wrote the following notes detailing her meeting, a copy of which is attached to her certification:

> Met Corey today at FDC. Corey noted that [the] Judge had advised him that he could file [a] notice of appeal & asked about filing one. I explained he had waived that rt. [right] in his plea agreement + that [the] Judge was still obligated to tell all [defendants] that they had that right but that due to the waiver, any appeal he filed would probably be dismissed. After I answered his questions about [the] amt [amount] of time he had to serve, considering good time & time already served, he said he was satisfied & did not want to appeal.
> As for amt [amount] of time still left on his sentence, I told him he had served 20 mos. already & would get 54 days/yr good time = 432 days (8X54).
> He asked me to get his cell phones back from govt [government] & send them to his brother, Roger.
>
> Said he appreciated what I'd done for him.
>
> <u>Note</u>: Roger picked up cell phones from me on 3/15/19.

At the conclusion of the hearing, the Court afforded the parties a week and a half to submit supplemental briefing regarding Petitioner's Motion. In Petitioner's Post-Hearing Supplemental Brief, Petitioner concedes that the "evidence at the evidentiary hearing did not establish by a preponderance of the evidence that his trial counsel, Anne Singer, Esquire, failed to consult with him fully concerning the advantages and

8

disadvantages of filing an appeal." For this reason, Petitioner concedes that Ground 1 of his petition, his ineffective assistance claim that Singer failed to discuss the advantages and disadvantages of filing an appeal, is moot. (ECF No. 24 at 1.) Accordingly, the Court's Opinion will only address Petitioner's remaining ineffective assistance claim that Singer failed to file a notice of appeal after Petitioner told her to do so.

## **DISCUSSION**

Section 2255 provides in relevant part that:

> [a] prisoner in custody under sentence of a court established by Act of Congress claiming the right to be released upon the ground that the sentence was imposed in violation of the Constitution or laws of the United States ... may move the court which imposed the sentence to vacate, set aside or correct the sentence.

28 U.S.C. § 2255(a).

Petitioner's remaining ineffective assistance of trial counsel claim is governed by the Strickland standard. Petitioner must first "show that counsel's representation fell below an objective standard of reasonableness." Strickland v. Washington, 466 U.S. 668, 688 (1984). He must then show "a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome." Id. at 694. The Supreme

9

Court addressed Strickland's application to counsel's failure to file an appeal in Roe v. Flores-Ortega, 528 U.S. 470 (2000). In Roe, the Supreme Court held that counsel provides ineffective assistance if he disregards a defendant's explicit instruction to file an appeal. Id. at 477. Under such circumstances, prejudice is presumed, even where the defendant has executed an appeal waiver. Garza v. Idaho, 139 S. Ct. 738, 746-47 (2019). However, the Supreme Court clarified that "a defendant who explicitly tells his attorney *not* to file an appeal plainly cannot later complain that, by following those instructions, his counsel performed deficiently." Roe, 528 U.S. at 577 (citing Jones v. Barnes, 463 U.S. 745, 751 (1983) (emphasis in original)).

Thus the issue before the Court is whether Singer rendered ineffective assistance of counsel by failing to file an appeal after Petitioner instructed her to do so. This is a case where the testimonies of both Petitioner and Singer cannot be true. The witnesses contradict each other on the key issue of whether Petitioner asked Singer to file a notice of appeal after this sentencing or otherwise expressed displeasure with his sentence. "It is the court's role to judge the credibility of the witnesses in an evidentiary hearing on a § 2255 motion." Mondelice v. United States, No. 15-295 2021 U.S. Dist. LEXIS 39509, at *25 (M.D. Pa. Mar. 23, 2021).

For the following reasons, the Court finds the testimony of Singer, which is supported by the Government's exhibits, to be credible, and finds that Petitioner did not at any time, direct his counsel to file a notice of appeal regarding his sentence or express he was upset with the sentence he received. Petitioner's testimony was less credible and had inconsistencies.

First, Singer's testimony is consistent with the documents provided in support of the Government's opposition. For example, Singer sent Petitioner a letter on March 14, 2019, one day after meeting with Petitioner. In the letter, Singer addressed two actions Petitioner asked her to complete: (1) send a copy of the judgment; and (2) take care of his cellphones. The letter, created contemporaneously with her visit to Petitioner, makes no reference of an appeal. Petitioner argues that if an agreement had been reached not to file an appeal the letter should have explicitly addressed Petitioner's decision to forego one. Singer in her testimony conceded that would have been a better practice, but this argument proves too much. A careful reading of the letter reveals a tone of finality, completeness, and a satisfactory parting of the ways. Singer wishes Petitioner well in his future. Given Singer's demonstrated penchant for due diligence one would expect if she had received a direction to appeal not silence but an affirmative statement of her attention to file the requested

11

notice of appeal and sent Petitioner a copy. The letter's silence on the issue of appeal is more convincing evidence the conversation about filing an appeal did not occur than it is proof that an important direction was received and then left undocumented. The Court finds this letter is consistent with Singer's testimony that Petitioner did not request an appeal and instead said he did not want to file an appeal and was fine with his sentence.

Singer's testimony is further supported on this point by again contemporaneous notes dated March 13, 2019, which she drafted immediately following her meeting with Petitioner. In particular, the notes recounted that Singer and Petitioner discussed the possibility of filing an appeal and at the conclusion of this discussion, Petitioner expressed he was satisfied and did not want to file an appeal. The notes further explain Petitioner told Singer he appreciated what she had done for him. These notes are consistent with Singer's testimony that Petitioner did not want to file an appeal, that Petitioner was fine with the sentence he had received, that Petitioner was surprisingly in a very good mood and very warm to Singer, and that Petitioner even thanked her at the end of the meeting.

Second, Petitioner consistently contradicted himself at the hearing. By way of example, Petitioner argued he was heated and cussing during his conversation with Singer at FDC-Philadelphia

12

and repeatedly notified Singer that he wanted an appeal and was upset with his sentence. However, Petitioner also testified that Singer said she would file an appeal the first time Petitioner asked her to do so. If Singer immediately acquiesced in his request as she testified she knew it was her legal obligation to do it is difficult to understand why Petitioner would have been so upset and cussing during his meeting with her. Moreover, Petitioner would not have felt the need to repeatedly explain to Singer he wished to file an appeal as he testified.

Second, Petitioner testified that he only first found out that Singer did not file an appeal around September 2019 after a conversation with his brother. Petitioner testified his brother was unable to find his appeal on the docket. However, in response to a question inquiring how soon after the conversation with his brother did Petitioner file his appeal, Petitioner testified that when speaking to his brother he informed him that Petitioner already had someone finalizing an appeal because he never heard anything about the original appeal. He testified he was trying to verify first if he had an appeal already filed because if he did, then he was not going to send the appeal the paralegal was helping him draft. The Court finds Petitioner's testimony that he was already working on finalizing an appeal at the time he spoke to his brother inconsistent with his testimony

13

that he first discovered Singer failed to file an appeal in September 2019.  Simply put, why work on filing a notice of appeal or have someone do if you had been operating on the assumption one had been filed?  Petitioner testified that even before he spoke to his brother, he never once called Singer between the months of March and September 2019.

Petitioner's explanation – that he never spoke with Singer because he could not trust her anymore and he was hurt when he found out that his appeal was not on the docket – rings hollow. He testified he did not learn about the failure to file an appeal until September 2019.  This does not explain why he would not have called Singer during the six months that passed, an omission inconsistent with his testimony that he instructed Singer to file an appeal.  Petitioner's actions are more consistent with Singer's testimony that Petitioner instructed her not to file an appeal and was fine with the sentence he received.

Third, Petitioner testified that Singer did nothing for him, did not work hard on his behalf, and simply wanted to finish Petitioner's case.  However, the Court finds that Singer, consistent with her reputation, worked diligently on behalf of Petitioner as demonstrated by her (1) careful review and successful challenge to the draft Pre-Sentence Report resulting in a lower advisory guideline range; and (2) Singer's detailed

14

sentencing memorandum and persuasive advocacy which resulted in the Court granting a downward variance.

As a fourth example, Petitioner testified he previously provided Singer with caselaw and support for legal arguments, which she failed to use in court.  However, Petitioner, when asked, was unable to recall any cases or legal arguments he provided to Singer.

Fifth, Petitioner testified that he did not answer the question of whether he was satisfied with Singer at the plea hearing but his denial under oath is belied by the record.  In response to a direct question from the Court at his plea hearing: "Are you satisfied with [Singer's] representation of you," Petitioner responded, "Yes." (ECF No. 13-9 6:19-21.)

Based on the testimony and exhibits presented at the evidentiary hearing and in support of the Government's opposition, the Court finds that Petitioner has not met his burden to demonstrate that Singer's representation was ineffective.  The Court finds Petitioner instructed Singer not to file an appeal and notified her that he fully accepted the sentence he received.  Accordingly, the Court will deny Petitioner's counseled Motion to Vacate, Set Aside, or Correct his judgment of conviction imposed on March 11, 2019.

## **Certificate of Appealability**

The Court must assess whether a certificate of

appealability should issue.  A litigant may not appeal from a final order in a proceeding under 28 U.S.C. § 2255 without a certificate of appealability.  28 U.S.C. § 2253(c)(1)(B).  A certificate of appealability shall not issue unless there is a "substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2).  "Where a district court has rejected the constitutional claims on the merits, the showing required to satisfy § 2253(c) is straightforward: The petitioner must demonstrate that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong."  Slack v. McDaniel, 529 U.S. 473, 484 (2000)).  Based on the Court's credibility determinations and factual findings, reasonable jurists would not find it debatable as to whether the failure to file a notice of appeal violated Petitioner's constitutional rights.  Consequently, the Court will not issue a certificate of appealability.

## CONCLUSION

For the foregoing reasons, the Court will deny Petitioner's counseled Motion to Vacate, Set Aside, or Correct his judgment of conviction imposed on March 11, 2019, and the Court will not issue a certificate of appealability.  An appropriate Order will be entered.

Date: July 2, 2021            　　　　　s/ Noel L. Hillman          
At Camden, New Jersey         　　　　　NOEL L. HILLMAN, U.S.D.J.